## NEWBURGER-MORRIS CO. v. TALCOTT.

(Supreme Court, Appellate Division, First Department.    May 5, 1916.)

1. INTEREST ☞60—COMPOUND INTEREST.

   A written agreement that "interest shall be charged and credited to the account current * * * at the rate of 6 per cent. per annum," under which accounts were rendered monthly, does not warrant the monthly compounding of interest.

   [Ed. Note.—For other cases, see Interest, Cent. Dig. §§ 134–137; Dec. Dig. ☞60.]

2. FACTORS ☞44—COMMISSION FOR SERVICES.

   A factor's contract, providing for 9¾ per cent. commission on the first $100,000 of sale and 5 per cent. on all sales over that amount, does not warrant a charge for commissions at the higher rate for the first $100,000 of sales for each year of the contract, but the higher rate may be charged only on the first $100,000 of sales made after the contract went into effect.

   [Ed. Note.—For other cases, see Factors, Cent. Dig. §§ 58, 59; Dec. Dig. ☞44.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

158 N.Y.S.—50

3. ACCOUNT STATED ⬠6(2)—COMPOUND INTEREST.

The rendition and retention of an account showing the compounding of interest, which is unauthorized by the contract, is not the equivalent of a promise to pay such interest, and the payment thereof may be resisted, notwithstanding such retention.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 31–34, 36–38; Dec. Dig. ⬠6(2).]

4. ACCOUNT STATED ⬠ 6(2)—SURCHARGING AND FALSIFYING.

Assent to the correctness of an account will not be implied from receipt and retention thereof without objection, where the claim is subject to a special contract with which the account as made up is at variance.

[Ed. Note.—For other cases, see Account Stated, Cent. Dig. §§ 31–34, 36–38; Dec. Dig. ⬠6(2).]

5. ACCOUNT STATED ⬠6(2)—RETENTION—EFFECT.

The receipt and retention of an account containing illegal or unauthorized charges does not operate as an estoppel in favor of the party rendering it, unless, acting upon the faith of its acceptance, he has done or refrained from doing something to his disadvantage.

[Ed. Note.—For other cases. see Account Stated, Cent. Dig. §§ 31–34, 36–38; Dec. Dig. ⬠6(2).]

6. FACTORS ⬠44—REIMBURSEMENT FOR EXPENSES.

Under a factor's contract, giving him a general lien on all the merchandise covered by the contract for "all outlays, including legal expenses, and for liabilities incurred by reason of any act done or omitted" by his principal, where the factor, on information that his principal is surreptitiously violating the contract, retains counsel and employs detectives to ascertain and pass upon the facts, he cannot recover such expenses from his principal.

[Ed. Note.—For other cases, see Factors, Cent. Dig. §§ 58, 59; Dec. Dig. ⬠44.]

Appeal from Special Term, New York County.

Action by the Newburger-Morris Company against James Talcott. From a judgment of the Special Term, both parties appeal. Modified and affirmed.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, SMITH, and DAVIS, JJ.

Frederick M. Czaki, of New York City, for plaintiff.
Julius Henry Cohen, of New York City, for defendant.

SCOTT, J. This action arises out of a contract dated June 21, 1909, whereby the defendant agreed, for certain consideration, to act as factor for plaintiff, who was a merchant doing business in the city of New York. The contract by its terms was to run to and including September 1, 1910, and thereafter subject to termination at any time upon 30 days' notice given by either of the parties to the other. In its essential features the contract does not differ from that which was considered by this court with some care in Spain v. Talcott, 165 App. Div. 815, 152 N. Y. Supp. 611. It provides, in brief, that defendant should be the sole factor and selling agent of plaintiff, and that the latter should consign to him for sale upon commission the whole stock of goods owned or held by plaintiff when the contract was made, and all goods which, during the continuance of the agreement, plaintiff should purchase, manufacture, or receive for sale. All goods were to

be sold by defendant and invoiced in his name, although in point of fact the sales were made by plaintiff's office force. All accounts were payable to and collected by defendant. The lease of the place of business was taken in his name, and he agreed to pay the rent up to a certain stipulated figure, and the insurance was to be made payable to him. He had general supervision over the business and passed upon the credits. He agreed to advance to plaintiff on demand up to 50 per cent. of the net cost of merchandise purchased and 75 per cent. of the net value of outstanding accounts. For these advances and for his services in supervising the accounts and collecting the bills for merchandise it was agreed that defendant should receive interest on his advances and a commission on the amount of sales. The contract was terminated by the plaintiff by the notice provided for on September 29, 1911. A partial settlement was had without prejudice to the rights of the parties on matters not agreed to.

The court has found that on or about the 1st day of October, 1909, and on or about the 1st day of each and every month thereafter until and including the 1st day of September, 1911 (when the agreement was terminated), the defendant rendered to plaintiff statements of the dealings between the parties for the preceding month; that plaintiff retained each and every one of the aforesaid statements, and made no protest or objection as to any of them until after the 1st day of October, 1911; that said statements are not in any wise affected or tainted by fraud on the part of defendant; and that plaintiff was at all times subsequent to the receipt of said statements familiar with the nature, contents, and purport thereof, and was not placed under any duress or coercion with reference thereto by defendant.

[1] The defendant, on his appeal, calls in question the propriety of the judgment at Special Term in so far as it disallows his claim to be entitled to compound interest upon his advances, and his computation of the commissions for his services. So far as the claim to compound interest is concerned, the case presented is no different from that considered in Spain v. Talcott, supra, and we adhere to our views, expressed in that case, that the contract does not warrant the monthly compounding of interest.

[2] The other question presented by the defendant's appeal was not presented or considered in the Spain Case. The contract provides that:

"For his services as factor, supervisor, and selling agent as aforesaid James Talcott shall receive 9¾ per cent. on the first $100,000 of sales, which commission is guaranteed to the said James Talcott by the said Green-Newburger Company, and 5 per cent. on all sales over and above that amount, to be computed on the net amount of sales of the consigned goods."

The $100,000 of sales was reached in a few months after business began under the agreement of September, 1908. Thereafter defendant charged commission at the rate of 5 per cent. until September 1, 1909, when he began to again charge 9¾ per cent., claiming that under the contract he was entitled to 9¾ per cent. on the first $100,000 of sales for *each year* that the contract ran. This claim we consider to be entirely unfounded. The contract is perfectly clear and explicit,

and there is no room for construction. It was not a contract for a year with annual renewals, but a single contract running for one year at all events, and thereafter continuing until terminated by a notice from one of the parties to the other. This is clearly and definitely provided. So as to the commissions defendant is given the right to charge the higher rate of commissions only on the first $100,000 of sales made after the contract went into effect. It is expressly stipulated that for *all sales* after that amount the defendant should be entitled to only 5 per cent. commission.

[3] Upon both of the questions raised on the defendant's appeal the judgment appealed from is right, unless plaintiff has precluded itself from raising them by accepting and retaining, without protest or objection, the monthly accounts current in which the unauthorized charges of compound interest and commissions were plainly shown. The defense that accounts were stated and agreed to between the parties was not set up in the answer, but these accounts are none the less relied upon as evidence of an agreement by the parties to the items and charges contained therein. The finality of similar accounts current was insisted upon in the Spain Case, supra, in relation to the compounding of interest; but, as it appeared that the plaintiff in that case had from the beginning protested against being charged compound interest, it was manifest that the accounts did not express an acquiescence and agreement between the parties. In the present case no such protests are shown, but the question still remains whether the acquiescence by the plaintiff in the charges which we find to be illegal and unauthorized by the contract, such acquiescence being evidenced by the monthly receipt of accounts showing such charges and the retention thereof without objection or protest, so far concludes the plaintiff as to prevent his successful objection now to said charges. We think not. It is true that as to certain matters contained in such an account a party will be presumed to have acquiesced in the correctness of the account by receiving and retaining it without objection, and that as to such matters he may not afterwards attack the account except for fraud or mistake. But it is not as to every matter embraced in such an account that such acquiescence is presumed. So far as concerns the compounding of interest, it is settled by the highest authority that the rendition and retention of an account showing the compounding of interest is not the equivalent of a promise to pay such interest, and the payment thereof may be resisted, notwithstanding the receipt and retention, without protest or objection, of an account showing a charge of compound interest. Young v. Hill, 67 N. Y. 162, 23 Am. Rep. 99; Keane v. Branden, 12 La. Ann. 20; Goodrich v. Coffin, 83 Me. 324, 22 Atl. 217; Jorgensen v. Kingsley, 60 Neb. 44, 82 N. W. 104; Peeples v. Yates, 88 Miss. 289, 40 South. 996.

[4, 5] So also as to the unwarranted charge for commissions the established rule is that assent to the correctness of the account will not be implied from receipt and retention without objection, where the claim is subject to a special contract with which the account as made up is at variance. Lockwood v. Thorne, 18 N. Y. 285; Donald v. Gardner, 44 App. Div. 235, 60 N. Y. Supp. 668; Kusterer Brewing Co.

v. Friar, 99 Mich. 190, 58 N. W. 52; Gallinger v. Lake Shore Traffic Co., 67 Wis. 529, 30 N. W. 790; Valley Lumber Co. v. Smith, 71 Wis. 304, 37 N. W. 412, 5 Am. St. Rep. 216. It is well settled that the receipt and retention of an account containing illegal or unauthorized charges does not operate as an estoppel in favor of the party rendering it unless, acting upon the faith of its acceptance, he has done or refrained from doing something to his disadvantage. Of this there is no evidence in the present case.

It follows that the plaintiff has not, by the receipt and retention of the monthly accounts current, precluded himself from contesting upon the trial herein the validity of the charges for compound interest and excessive commissions.

[6] The plaintiff's appeal presents for consideration but a single question as to a charge against plaintiff for certain legal expenses incurred by defendant. These charges are allowed by the judgment. The contract provided that defendant should be the sole factor and selling agent for plaintiff, that all goods purchased by it should be consigned to him, and that he should at all times have a lien on the unsold goods for his advances, etc. Information was received by defendant that plaintiff was surreptitiously violating these provisions of the contract, and he retained counsel and employed detectives to ascertain the facts and to determine and enforce his rights against plaintiff. For the expenses thus incurred the judgment allows the defendant to recover from plaintiff. This we think was error. The only clause in the contract which is cited as justifying this charge against plaintiff is one which gives defendant a general lien upon all the merchandise covered by the contract for "all outlays of every sort, including all legal expenses and reasonable counsel fees, and for all liabilities which shall be made or incurred by James Talcott in connection with the said business, or by reason of any act done or omitted" by the plaintiff.

Clearly the liabilities covered by this clause were, like the legal expenses and counsel fees, those made or incurred "in connection with the said business, covered by the contract." The expenses now under consideration were not incurred in carrying on that business, but in protecting defendant's individual interests arising from a breach of the contract by plaintiff. They should have been disallowed. Spain v. Talcott, supra; Boise v. Talcott (D. C.) 212 Fed. 268. Upon the plaintiff's appeal, therefore, the judgment must be modified, by excluding these disbursements as a charge against the plaintiff. We find no other question which calls for discussion.

It follows that the judgment appealed from must be modified in accordance with the views hereinbefore expressed, and, as thus modified affirmed, with costs and disbursements to plaintiff. The order to be entered hereon, which will be settled on notice, should contain the necessary modifications of the findings. All concur.