SAMUEL H. WEBER, Plaintiff, *v.* CLIMAX MOLYBDENUM COMPANY and Others, Defendants.*

Supreme Court, Westchester County, April 9, 1925.

Corporations — stockholder's representative action to restrain holder of promissory notes from recovering thereon from maker, plaintiff's corporation — said corporation is assignee of contract between third person and defendant metal company whereby latter agreed to make certain advances for purpose of developing mines — contract recited mines would be taken over in name of corporation to be organized by defendant metal company — advances were to be paid in full from profits derived from operation of mines — plaintiff's corporation bound to enforce contract in reference to repayment of advances — issuance of notes and stock to cover advances deemed violation of said duty — enforcement of duty may be had in stockholder's representative action — plaintiff not required to request his corporation to bring action or to defend action brought to recover on notes — action herein commenced on time — collection of notes in action herein restrained — defendant metal company required to specifically perform contract.

This is a stockholder's representative action to restrain the holder of two promissory notes from proceeding to recover thereon from the maker, plaintiff's corporation, to restrain said corporation from paying said notes, and to determine that certain stock issued in payment of the indebtedness was illegally issued and that the same be surrendered. The plaintiff's corporation is the assignee of a contract entered into between a third person and defendant metal company, whereby the latter agreed to make certain advances for the purpose of developing mines, to take over such mines in the name of the corporation to be organized by it, and to be repaid in full from the profits derived from the operation of the mines prior to the distribution of any profits to parties in interest. The plaintiff's corporation was organized to take over the mines, and all its officers and directors, with the exception of one person, were officers and directors of the defendant

---

* Affd., 217 App. Div. 756,

metal company. It was the duty of plaintiff's corporation to enforce the contract in reference to the repayment of said advances, and it violated that duty by issuing notes to cover part of the advances and by the issuance of stock in payment of the balance of the advances made. Moreover, the performance of that duty, which the plaintiff's corporation has refused to perform, may be enforced in a stockholder's representative action.

Under the facts of this case, it was not necessary for the plaintiff to request his corporation to bring said action or to defend an action brought to recover on the notes given to secure advances made.

This action to restrain the payment of advances was brought in time, in the absence of any proof which would warrant a finding that the mines cannot be successfully operated and that the advances cannot be repaid from the profits therefrom.

Since under the contract the indebtedness represented by the notes is to be repaid out of profits realized by the operation of the mines, said indebtedness is not now due where no profits have, as yet, been realized.

Neither plaintiff nor his corporation is estopped from maintaining this action by reason of the construction of said contract by the directors of plaintiff's corporation.

Accordingly, the collection of the notes in the action herein must be restrained and the holder thereof should surrender the same for cancellation. Moreover, plaintiff's corporation is restrained from paying said notes.

Furthermore, the defendant metal company is required to surrender for cancellation all of such stock now in its possession or under its control issued in violation of the contract, and to indemnify plaintiff's corporation to the extent that stock cannot be surrendered against any loss and damage by reason of the issuance thereof. Further, the metal company must specifically perform the contract herein.

ACTION in equity by the plaintiff, on his own behalf and on behalf of all other stockholders of the defendant Climax Molybdenum Company similarly situated, to enjoin the defendants Grochau and American Metal Company from proceeding with an action to recover from the defendant Climax Company two promissory notes aggregating $658,231.52, which action is now pending in the Supreme Court, Westchester county, also to enjoin the defendant Climax Company from paying the said notes, and to have the court adjudge that the issuing of certain stock in payment of certain indebtedness of the Climax Company to the metal company was illegal and void; that the same be surrendered, and for other equitable relief.

*Paskus, Gordon & Hyman,* for the plaintiff.

*Joseph B. Cotton,* for the defendant American Metal Company.

SEEGER, J. The facts will be covered in the findings and it is not necessary to discuss them here to any great extent. It is sufficient to state that the action is based upon a contract in writing which bears date the 20th day of November, 1916, made by and between

Edward G. Heckendorf, and the defendant American Metal Company, Limited, in and by which said Heckendorf agreed to sell to the defendant metal company a certain option agreement, called the Leal option, covering several mining properties in Colorado, and also to make such further locations in the vicinity thereof as might be agreed upon and to convey the rights thus acquired to the American Metal Company, or to a corporation to be organized. The metal company agreed to pay $12,500 to be used by said Heckendorf to make the first payment under the option agreement and such other sum or sums of money as might be required for experimentation in connection with the mineral deposits upon said properties. And if it was concluded to exercise the right to complete the purchase under said option agreement of the properties therein described the said metal company agreed to "furnish and pay the several sums of money in said option agreement described, or such thereof as the vendee determines shall be paid on or before the dates therein named. And will also furnish such amount or amounts of money as may be necessary to perfect title to the mining claims herein agreed to be conveyed by the vendor, and will furnish such further sum or sums of money as may be required in the operation of the properties described in the option agreement hereto attached, and for the construction of a mill and operation equipment for the treatment of ores from the properties hereinbefore described, and such other properties as may be acquired by the corporation to be organized; also such sum or sums of money as may be necessary to meet the organization expenses of such corporation; and any and all other sum or sums of money required in connection with said described properties or any properties to be acquired for said company, prior to the organization of said company."

The defendant metal company further agreed to organize a corporation for the purpose of taking title to the properties described in the contract and other properties which it might be deemed advisable to acquire, and to convey such properties to said corporation, and that upon the organization of such corporation, the metal company should cause to be issued to Heckendorf twenty-five per cent of its capital stock.

The said agreement further provided:

" *Eleventh.* Any and all sum or sums of money paid or advanced by the vendee pursuant to this agreement shall be repaid in full to the vendee from the operation of the properties described in this agreement prior to the distribution to the parties in interest of any profits from such operation, and should a corporation be organized as herein provided for. and the properties herein described

be acquired by such corporation, said corporation shall assume and pay to the vendee any and all sum or sums of money so advanced or paid by the vendee prior to the date of such incorporation, before the· declaration of any dividends by said company, or the distribution of any profits in any manner to the stockholders of said company, or to any of the stockholders thereof. The sum or sums so advanced shall bear interest at the rate of six per cent per annum from the date advanced to the date of payment."

The said agreement was made by Heckendorf on behalf of himself and certain associates who were interested in the mining properties mentioned in the agreement with him.

Heckendorf and his associates assigned the properties in question to the defendant the American Metal Company, Limited, pursuant to the said agreement and pursuant to agreement the metal company caused the defendant the Climax Molybdenum Company to be incorporated under the laws of the State of Delaware with a capital stock of 50,000 shares without nominal or par value, twenty-five per cent of which was issued to Heckendorf and his associates.

Prior to the incorporation of the Climax Company the defendant metal company advanced and paid out pursuant to the Heckendorf contract more than $400,000.

At all times after the incorporation of the Climax Company the directors of said company with the exception of E. G. Heckendorf were officers, directors or employees of the defendant metal company, and the officers of the Climax Company since its incorporation have been directly or indirectly connected with the defendant metal company and all such directors and officers of the defendant Climax Company with the exception of Heckendorf were and still are under the domination and control of the defendant American Metal Company.

After the incorporation of the Climax Company its capital stock was increased from 50,000 shares without par value to 100,000 shares without par value. And thereafter its capital stock was further increased to 170,000 shares, 150,000 of which were common stock without par value, and 20,000 shares were seven per cent non-cumulative preferred stock of the par value of $100 each.

On February 13, 1918, at the meeting of the directors, the defendant Climax Company assumed the performance of the Heckendorf contract, and also assumed the payment of the amount advanced by the defendant metal company up to February 13, 1918, to wit, $448,131.43, and provided that that sum was to be paid before the declaration of any dividends by the Climax Company or the distribution of any profits to the stockholders of the Climax Company. And on the said 13th day of February, 1918,

the directors of the Climax Company authorized the officers of the said company to execute its obligations for the sum of $448,131.43, payable on or before two years from the date of the issuance thereof, to bear interest at the rate of six per cent per annum from that date until paid, and those obligations recited that they should be paid before the declaration of any dividends by the company or the distribution of any profits to its stockholders. The said directors further authorized a further issue of obligations of the company in the aggregate sum of $400,000 to cover advances which were to be made thereafter, and pursuant to this resolution the notes of the defendant Climax Company were issued on July 31, 1918, in the sum of $375,000, and thereafter the defendant Climax Company made a further issue of notes for advancements made pursuant to the Heckendorf agreement in an aggregate sum of $281,690, and thereafter on the 31st day of December, 1922, the defendant Climax Company retired all of its outstanding notes aforesaid and issued in place thereof preferred stock to the amount of $1,291,000 par value. With the other issue of notes of November 29, 1920, aggregating $281,690 as aforesaid, the defendant Climax Company issued common stock as a bonus, to wit, one share of common stock for each $10 face amount of notes issued.

The Climax Company also executed two demand notes to the defendant metal company, one dated April 1, 1924, for $525,124.03, and the other dated April 19, 1924, for $133,107.49, which the metal company assigned and thereafter by mesne assignments said notes were assigned to the defendant Grochau, who very soon thereafter demanded payment of them and on the 26th day of April, 1924, instituted an action thereon against the Climax Company the prosecution of which is sought to be enjoined in this action.

The circumstances under which these notes were given and so soon assigned and payment demanded, and under which the action was brought are significant. Grochau is represented in the action by lawyers whose offices are in the same suite with the counsel for the metal company and after the commencement of the action on the notes a special meeting of the stockholders of the Climax Company was held on the 9th day of May, 1924. Telegrams of protest were sent to the company by the plaintiff and other minority stockholders. At the meeting a statement was made by the president of the company stating that the indebtedness was a *bona fide* indebtedness of the company and that the company had no defense thereto, and a resolution was passed to the effect that " no steps or proceedings be taken by this Company in said action and that judgment therein be permitted to go by default,

or, if deemed advisable by the President, an answer admitting said indebtedness be filed in said suit."

The methods of the metal company were improper in taking security for the moneys loaned and advanced under the Heckendorf contract for the furtherance of the venture, *first*, in the issuance of additional stock which greatly reduced the percentage of the interest in the company held by the minority stockholders who had discovered the mines and turned them over pursuant to the contract, and *second*, in issuing notes for the amounts advanced and then having actions brought to collect the same out of the assets of the company, the result of which would be to foreclose these minority stockholders out of all their interests in the company, at a time when it is the evident purpose of the metal company to continue the business for its own benefit. By so doing it ignores the contract requiring it to wait for the repayment of its advances until the same could be repaid out of the operation of the mines, and such action is a clear violation of the contract.

The Climax Company took an assignment of the Heckendorf contract, and of all rights thereunder. It was its duty to enforce it upon all parties thereto including the metal company. In the interest of the metal company it evaded that duty, and so conducted itself that the minority stockholders will lose their interests in the property which may prove to be valuable. If it does not so prove the majority stockholders under the control of the metal company are not entitled by these methods to acquire and appropriate the entire assets to its and their benefit. There is abundance of authority for the proposition that it is the duty of the Climax Company to enforce the contract. (*Seymour* v. *S. F. C. Assn.*, 144 N. Y. 333; *Rogers* v. *N. Y. & T. L. Co.*, 134 id. 197; *Morgan* v. *Bon Bon Co.*, 222 id. 22.)

It was not necessary for the plaintiff to request the Climax Company to bring this action, or to defend the Grochau action, and the plaintiff stockholder has the right to maintain it. (*Hanna* v. *Lyon*, 179 N. Y. 107; *Brinckerhoff* v. *Bostwick*, 88 id. 52; *Sage* v. *Culver*, 147 id. 241; *Dykman* v. *Keeney*, 154 id. 483; *Pollitz* v. *Gould*, 202 id. 11; *Holmes* v. *Camp*, 180 App. Div. 409.)

This action was brought in time. The contract is not unreasonable. It has not yet been shown that the mine cannot be successfully operated. When operated it was during war time. After the war the demand for this new product failed. The large sums paid for experimentation and advertising and the fact that the operation of the mine was resumed shows that the project has not been abandoned.

The indebtedness represented by the Grochau notes is not

presently due because it is payable out of the operation of the mines and out of profits. No profits having been realized the debt is not due. (*Koster* v. *Lafayette Trust Co.*, 207 N. Y. 336; *Oothout* v. *Warner*, 162 App. Div. 901; *Lighton* v. *City of Syracuse*, 188 N. Y. 499.)

Neither the plaintiff nor the Climax Company is estopped from maintaining this action by reason of any construction placed upon the contract at the first meeting of the Climax Company by its directors and counsel. (21 C. J. 1119 *et seq.*; *Organ* v. *Stewart*, 60 N. Y. 413; *Newburger-Morris Co.* v. *Talcott*, 172 App. Div. 485; *Pollitz* v. *Gould*, 202 N. Y. 11, 17; *Holmes* v. *Camp*, 180 App. Div. 409.)

The plaintiff is entitled to judgment.

*First.* Enjoining the defendant Grochau from collecting the notes held by him, and that he surrender same for cancellation.

*Second.* Enjoining the Climax Company from paying the same.

*Third.* Declaring that the acts of the Climax Company in issuing its notes and its increased capital stock, both common and preferred, in payment of its indebtedness to the defendant metal company were illegal and void and should be set aside, and the metal company be ordered and directed to surrender for cancellation all such stock now in its possession, or under its control, or to the extent that that cannot be done, indemnify the Climax Company against any loss and damage by reason of the issuance thereof.

*Fourth.* That the defendant metal company be ordered and adjudged to specifically perform the Heckendorf contract.

*Fifth.* That whenever it can be made to appear that the mining property of the Climax Company cannot be operated successfully by reason of temporary conditions that the said defendant metal company apply to the court for a temporary suspension of operations until conditions warrant another attempt to operate the said properties.

*Sixth.* That whenever it can be made to appear that said mining property is a failure and cannot be successfully operated, that the defendant metal company apply to the court for relief from said contract.

Judgment is, therefore, ordered accordingly, with costs. The parties may settle findings on notice.