344 F.2d 294
 Bernard KLEBANOW and George Lewis, Plaintiffs-Appellants,
v.
NEW YORK PRODUCE EXCHANGE, New York Produce Exchange Clearing Association, and Merrill Lynch, Pierce, Fenner & Smith Incorporated, Defendants-Appellees, and
Ira Haupt & Company and Morton Kamerman as Liquidating Trustee, etc., Defendants.
 No. 305.
 Docket 29270.
 United States Court of Appeals Second Circuit.
 Argued January 20, 1965.
 Decided April 2, 1965.
 
 Max Freund, New York City (Rosenman, Colin, Kaye Petschek & Freund, Jerome E. Sharfman, New York City, of counsel), for plaintiffs-appellants.
 Donald Marks, New York City (Baer, Marks, Friedman & Berliner, New York City, Stephen F. Selig, New York City, of counsel), for defendant-appellee New York Produce Exchange Clearing Association.
 William B. Shealy, New York City (Holtzmann, Wise & Shepard, New York City, Howard M. Holtzmann, New York City, of counsel), for defendant-appellee, New York Produce Exchange.
 Richard C. Casey, New York City (Brown, Wood, Fuller, Caldwell & Ivey, New York City, Louis B. Eten, James B. May, New York City, of counsel), for defendant-appellee, Merrill Lynch, Pierce, Fenner & Smith Incorporated.
 Before MOORE, FRIENDLY and MARSHALL, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 The novel issue, crucial to decision of this appeal, is whether limited partners of a New York partnership in dissolution can sue on its behalf for damage claimed to have been inflicted on it by conduct proscribed by the federal anti-trust laws, when the partnership and the liquidating partner allegedly have rendered themselves unable to sue and their delegate is claimed to be unwilling to do so because of affiliations with the defendants.
 
 
 2
 Plaintiffs were limited partners in the brokerage firm of Ira Haupt & Co., a New York limited partnership whose term was to end December 31, 1963. The partnership agreement provided that upon any termination or dissolution of the partnership, liquidation should be effected by the managing partners (or the managing partner, if there were only one) as "Liquidating Trustees." After November 1, 1963, Morton Kamerman was sole managing partner.
 
 
 3
 The instant complaint, filed in the District Court for the Southern District of New York on March 4, 1964, alleged the foregoing and went on as follows: In late November, 1963, Haupt appeared to be currently unable to meet its obligations as they matured. On November 25, Kamerman and the other general partners entered into an agreement with various bank creditors and the New York Stock Exchange whereby they divested themselves of power to do any act in behalf of the partnership, and executed powers of attorney authorizing James P. Mahony, an employee of the Stock Exchange, as representative of the Exchange and the banks, to exercise all their powers with respect to the assets and business of Haupt. Since that date the Exchange and the banks have exercised full control over these assets and have been liquidating them. The three defendants (other than the partnership and Kamerman) — New York Produce Exchange, New York Produce Exchange Clearing Association, and Merrill Lynch, Pierce, Fenner & Smith Incorporated — were claimed to have engaged "in an illegal contract combination and conspiracy with others, unknown to the plaintiffs, to restrain and monopolize trade in, and to fix the price of, cottonseed oil," thereby damaging the partnership "in the sum of at least $11,000,000." The Stock Exchange, the complaint said, will not permit Haupt or Kamerman to prosecute this claim because (1) Merrill Lynch "and possible additional defendants" are members of that exchange and of the Produce Exchange, (2) members of the Board of Governors of the Stock Exchange are partners in firms that also have partners on the Board of Governors of the Produce Exchange and the Clearing Association, and (3) the Stock Exchange "has numerous members who are also members of the Produce Exchange." Demand on Haupt or Kamerman to prosecute the claim would thus have been futile.
 
 
 4
 Defendants moved under F.R.Civ. P. 12(b) to dismiss for failure to state a claim on which relief can be granted. They contended that plaintiffs lacked capacity to sue[1] and that the allegations of violation of the antitrust laws were insufficient. Sustaining the first ground, Judge Tyler granted the motions, without having to reach the second.
 
 
 5
 Section 4 of the Clayton Act, 15 U.S.C. § 15, authorizes suit by "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws." We have no doubt, and the few authorities indicate, that when business is conducted by a partnership, the statute views the partnership rather than a partner as the person injured. Coast v. Hunt Oil Co., 195 F.2d 870 (5 Cir.), cert. denied, 344 U.S. 836, 73 S.Ct. 46, 97 L.Ed. 651 (1952); Leh v. General Petroleum Corp., 165 F.Supp. 933 (S.D.Cal.1958). Who may bring an action under § 4 of the Clayton Act on behalf of a partnership is a question within federal competence. But the parties agree, and we shall assume they are right, that the provision in F.R.Civ.P. 17(b) — "In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held" — refers this determination to the law, the "whole law," of the place of suit. Since New York, the forum in this case, is also the place where the limited partnership was formed and had its headquarters, we encounter no choice of law problem as between states.
 
 
 6
 Pointing to the description of the liquidator as a "trustee," appellants claim the case to be won for them by the principle, Restatement (Second), Trusts § 282(2) (1959), followed in New York, that a cestui que trust may sue to enforce a claim of the trust when the trustee has wrongfully refused. Bonham v. Coe, 249 App.Div. 428, 292 N.Y.S. 423, aff'd mem., 276 N.Y. 540, 12 N.E.2d 566 (1937); Brooklyn Free Kindergarten Soc'y v. Elbran Realty Corp., 255 App. Div. 852, 7 N.Y.S.2d 531 (1938). Appellees answer — satisfactorily insofar as the argument is claimed to be decisive — by saying that it unduly stresses the words of the Haupt partnership agreement; Kamerman's legal position was no different than if he had been called a liquidating partner or agent, or a liquidator simpliciter. But the point remains pertinent as an analogy; appellants properly ask why, if a cestui que trust may sue under such circumstances, a limited partner may not. See Klebanow v. Funston, 35 F.R.D. 518 (S.D.N.Y.1964). They press also the example of the stockholder, an analogy which becomes the more forceful when we add that a preferred stockholder also may maintain a derivative action, Ashwander v. TVA, 297 U.S. 288, 321-322, 56 S.Ct. 466, 80 L.Ed. 688 (1936).[2] This gains further force from the New York Court of Appeals' statement that the position of a limited partner is "analogous to that of a corporate shareholder." Ruzicka v. Rager, 305 N.Y. 191, 197-198, 111 N.E.2d 878, 39 A.L.R.2d 288 (1953).
 
 
 7
 Appellees respond that limited partners are mere creditors who must work out their remedies through receivership or bankruptcy; appellants disclaim creditor status in this appeal, although on another, Klebanow v. Chase Manhattan Bank, 343 F.2d 726 (2 Cir. 1965), they assert they are that for the purpose of voting their claims as limited partners in the election of a trustee in bankruptcy. A limited partner, barred from using his name in the firm title, said to lack "property rights" in partnership assets, and presumed to have priority over other partners in the distribution of assets, does have some resemblance to a creditor. See N.Y. Partnership Law, McKinney's Consol. Laws, c. 39, §§ 94, 112; Alley v. Clark, 71 F.Supp. 521 (E.D.N.Y.1947). However, in the main, a limited partner is more like a shareholder, often expecting a share of the profits, subordinated to general creditors, having some control over direction of the enterprise by his veto on the admission of new partners, and able to examine books and "have on demand true and full information of all things affecting the partnership * *" See N. Y. Partnership Law §§ 98, 99, 112. That the limited partner is immune to personal liability for partnership debts save for his original investment, is not thought to be an "owner" of partnership property, and does not manage the business may distinguish him from general partners but strengthens his resemblance to the stockholder; and even as to his preference in dissolution, he resembles the preferred stockholder. Indeed, it makes considerably greater sense to clothe the instant appellants with whatever descriptive phrase is necessary to enable them to sue on behalf of the partnership than to entertain derivative suits by persons owning a few shares in giant corporations, especially if the shares are non-participating redeemable preferred. Of course, the defendants in any suit brought by limited partners are entitled to process that will make any judgment binding on the partnership, but that has been accomplished here.
 
 
 8
 Appellees say that however all this may be, the issue has long since been decided otherwise by New York's legislature in § 115 of the Partnership Law:
 
 
 9
 "Parties to actions. A contributor, unless he is a general partner, is not a proper party to proceedings by or against a partnership, except where the object is to enforce a limited partner's right against or liability to the partnership."
 
 
 10
 This provision came into New York law in 1922 when the legislature adopted the Uniform Limited Partnership Act, Laws 1922, ch. 640, § 1. The corresponding provision in the previous law, Laws 1897, ch. 420, § 38,[3] carried forward in the 1909 and 1919 Partnership Laws, Consol. Laws of 1909, ch. 39, § 38; Laws 1919, ch. 408, § 98, had read:
 
 
 11
 "Actions by and against the partnership — Actions and special proceedings in relation to the business of the partnership may be brought and conducted by and against the general partners, in the same manner as if there were no special partners."
 
 
 12
 Appellees do not seriously contend that the framers of the Uniform Limited Partnership Act or the legislature of 1922 had focused on the problem here at issue. In reading the language we must remember that "Legislative words are not inert, and derive vitality from the obvious purposes at which they are aimed," Griffiths v. Helvering, 308 U. S. 335, 355, 60 S.Ct. 277, 278, 84 L.Ed. 319 (1939). The purposes of § 115, like that of its less minatory predecessor, were reasonably plain. General partners need not join limited partners in an action by the partnership; ordinarily limited partners may not sue since this will interfere with the management by the general partners, Lieberman v. Atlantic Mutual Ins. Co., 62 Wash.2d 922, 385 P.2d 53 (1963); a suitor against the partnership need not join a limited partner; indeed, he may not do so if the partnership be solvent. See Fuhrman v. Von Pustau, 126 App.Div. 629, 111 N.Y.S. 34 (1908). The words say all this and say it well. But they do not have to be read as saying that a limited partner cannot bring an action on behalf of the partnership when the general partners have disabled themselves or wrongfully refused; and, although they could be so read, we see no sufficient reason for doing so when in quite similar situations the cestui que trust or the preferred stockholder is allowed to do exactly that. The predecessor New York statute would hardly be read as going so far; we see no basis for thinking that, in its effort to achieve uniformity with other states, the legislature thought it would be altering New York law in this respect. Although the state decisions bearing directly on the point are from tribunals not high in the judicial hierarchy and may be susceptible of distinction, they at least reveal that the New York courts do not consider § 115 a clear mandate against limited partners' capacity to bring an action like this. Cooper Prods. Co. v. Twin-Bowl Co., N.Y.L.J., Aug. 21, 1962, p. 8, col. 7 (Sup.Ct.); Executive Hotel Associates v. Elm Hotel Corp., 41 Misc.2d 354, 245 N.Y.S.2d 929 (Civ.Ct.), aff'd per curiam, 43 Misc.2d 153, 250 N.Y.S. 351 (App.T.1964);[4] and the only relevant statement by the Court of Appeals that has been cited to us, see Ruzicka v. Rager, supra, although in no way decisive since the issue was hardly in the court's mind, is helpful to appellants. If New York returns only a murky answer to the question of capacity posed by F.R.Civ.P. 17(b), federal judges are entitled to resolve the doubt in a way that permits the assertion of a federal claim. See Leh v. General Petroleum Corp., supra, 165 F.Supp. at 937; Blake, The Shareholders' Role in Antitrust Enforcement, 110 U.Pa.L.Rev. 143, 145-52 (1961). Contrast Alley v. Clark, supra, 71 F.Supp. at 525.
 
 
 13
 The district judge was influenced to a contrary view by the limited partner's right to have a "dissolution and winding up by decree of court," N.Y. Partnership Law § 99, presumably for the same causes as a general partner, § 63, in which the court may, in its discretion, appoint a receiver. But we see no reason why such possibilities should prevent the speedier and more effective remedy of suit by a limited partner, any more than the beneficiary's right to ask that a trustee be instructed or removed prevents suit by him when the trustee has wrongfully refused. We would indeed expect that the New York courts would require strong allegations and proof of disqualification or wrongful refusal by the general partners before allowing a limited partner to sue on the partnership's behalf — a mere difference of opinion would be nowhere near enough. Compare Coast v. Hunt Oil Co., supra, 195 F.2d at 872. But the allegations in the instant complaint that the partners, including the liquidating partner, have completely divested themselves of power in favor of a stranger who is acting on behalf of creditors, and that one of these creditors, who is also the stranger's employer, has affiliations with the defendants, meet the test.
 
 
 14
 Appellees make a point that on June 26, 1964, Ira Haupt & Co. was adjudicated a bankrupt and the refereee nominated a trustee, in whom § 70, sub. a(5) and (6) of the Bankruptcy Act vest all "property, including rights of action, which prior to the filing of the petition he [the bankrupt] could by any means have transferred or which might have been levied upon and sold under judicial process against him, or otherwise seized, impounded, or sequestered" and "rights of action arising upon * * * the unlawful * * * injury to his property." But Meyer v. Fleming, 327 U.S. 161, 66 S.Ct. 382, 90 L.Ed. 595 (1946), held that the appointment of a trustee in reorganization for a railroad did not preclude prosecution of a stockholder's derivative action theretofore filed, and that principle seems entirely applicable here. As the Supreme Court said, the trustee is sufficiently protected by his rights to start a new suit, to intervene in the existing one, to settle the claim, or, if he deems its prosecution actually prejudicial, to cause the action to be abated. 327 U.S. at 167-168 and n. 14.
 
 
 15
 The district judge did not reach appellees' alternative point that the complaint did not set forth "a short and plain statement of the claim showing that the pleader is entitled to relief," required by F.R.Civ.P. 8. As to this we agree with appellees. The statement, which we have quoted in full, although assuredly "short," is anything but "plain" — it furnishes not the slightest clue as to what conduct by the defendants is claimed to constitute "an illegal contract combination and conspiracy." While Nagler v. Admiral Corp., 248 F.2d 319, 322-323 (2 Cir. 1957), repudiated the idea that "some special pleading * * * is required in antitrust cases," it is no authority that in such cases the pleader is specially privileged to plead nothing but the statutory words. A mere allegation that defendants violated the antitrust laws as to a particular plaintiff and commodity no more complies with Rule 8 than an allegation which says only that a defendant made an undescribed contract with the plaintiff and breached it, or that a defendant owns a car and injured plaintiff by driving it negligently. See 2 Moore, Federal Practice ¶ 8.13 (2d ed. 1964). But it is equally clear that if the district judge had properly taken this view, amendment of the complaint would nevertheless be allowed. See 3 Moore, Federal Practice ¶¶ 15.08[2], 15.10 (2d ed. 1964). It would thus be improper to affirm dismissal upon this ground.[5]
 
 
 16
 The judgment of dismissal for want of capacity to sue is reversed with instructions to grant leave to file an amended complaint, in default of which a new order of dismissal may be entered.
 
 
 
 Notes:
 
 
 [1]
 Although the defense of lack of capacity is not expressly mentioned in rule 12(b), the practice has grown up of examining it by a 12(b) (6) motion when the defect appears upon the face of the complaint. See Hershel Cal. Fruit Prods. Co. v. Hunt Foods, Inc., 119 F.Supp. 603 (N.D. Cal.1954); Coburn v. Coleman, 75 F. Supp. 107 (W.D.S.C.1947); compare Jacques Krinj En Zoon v. Schrijver, 151 F.Supp. 955 (S.D.N.Y.1957), an approach widely employed for the statute of limitations defense, see 2 Moore, Federal Practice ¶ 12.10 (2d ed. 1964). In any event, the plaintiffs have not objected, and the portion of the motion relating to capacity could be regarded as a pre-answer motion for summary judgment, entertained by the judge in his discretion. F.R.Civ.P. 56(b)
 
 
 [2]
 Note also the "double derivative" action by a stockholder of a corporation owning the stock of the injured corporation. See Holmes v. Camp, 180 App.Div. 409, 167 N.Y.S. 840 (1917); Goldstein v. Groesbeck, 142 F.2d 422, 425, 154 A.L.R. 1285 (2 Cir.), cert. denied, 323 U.S. 737, 67 S.Ct. 36, 89 L.Ed. 590 (1944); 2 Hornstein, Corporation Law and Practice § 712 at 193-94 & n. 13-14 (1959)
 
 
 [3]
 This was a minor revision of Rev.Stat., 1827-1828, pt. II, ch. IV, tit. I, § 14, which in turn had revised a somewhat different provision in Laws 1822, ch. 244, § 13 — the first limited partnership act in this country, Note, 36 Harv.L.Rev. 1017 n. 3 (1923)
 
 
 [4]
 In Lightyger v. Franchard Corp., N.Y. L.J., Oct. 23, 1964, p. 16, col. 3; N.Y. L.J., Dec. 30, 1964, p. 16, col. 1 (Sup. Ct.), relied on by appellees, the judge first passing on the complaint seems to have assumed that the limited partners were seeking, or for some reason had to seek, to bring a class action; a second judge held the amended complaint inadequate for that purpose. We find little help in these decisions at motion term
 
 
 [5]
 We do not wish to be understood as necessarily accepting the implication of the concurring opinion that an amended complaint must allege that the trustee in bankruptcy has unwarrantedly refused to sue. But it surely would be advisable for the district court to invite the views of the trustee as to the effect of the suit upon the administration of the estate
 
 
 
 17
 MOORE, Circuit Judge (concurring in the result):
 
 
 18
 I concur in the result which calls for the service of an amended complaint in default of which an order of dismissal may be entered. The factual situation appears to have changed, and to be changing, radically since charges were made that James P. Mahony was too closely connected with some of the defendants to bring any action against them with or without enthusiasm. In any amended complaint, the limited partners will have to disclose amongst other things (1) why Mahony's successor, Edward Feldman, is (if he be) similarly tainted; (2) why any representative of the courts or of the general partners is legally disqualified from trying to work out a solution of the rather complicated financial situation in which the parties find themselves or to bring any necessary lawsuits; and (3) the basis, if any, of any cause of action, apart from conclusory allegations which they, the limited partners, should have a right to bring or take over. In short, by this concurrence, I do not concede the right of these limited partners to bring this action on the facts thus far alleged nor deny that there is any possibility that an amended complaint may not reveal such a right. This issue can only be determined in the light of the factual allegations of a new complaint. This is the result wisely reached by my colleague, Judge Friendly, in which I concur.