**DELBON RADIOLOGY and Albert Joe Beardsley, Plaintiffs,**

v.

**TURLOCK DIAGNOSTIC CENTER et al., Defendants.**

**No. CV–F–93–5232–REC**

United States District Court, E.D. California.

Nov. 3, 1993.

Michael I. Spiegel, Spiegel Liao and Kagay, Richard D. Rosenberg, Law Office of Richard D. Rosenberg, San Francisco, CA, for Delbon Radiology and Albert Joe Beardsley.

Michael A. Duncheon, Hanson Bridgett Marcus Vlahos and Rudy, San Francisco, CA, for Emanuel Medical Center, Turlock Diagnostic Center.

Daniel Oliver Jamison, Stammer McKnight Barnum and Bailey, Fresno, CA, Arthur F. Godwin, Griffith and Masuda, Turlock, CA, for defendants Arakelian, James, Eisenberg, Clark, Herman, Andrew, etc. medical doctors and limited partners of Turlock Diagnostic Center.

## ORDER RE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR SUMMARY ADJUDICATION

COYLE, Chief Judge.

On October 4, 1993, the Court heard defendants' Motion for Summary Judgment or Summary Adjudication. Upon due consideration of the written and oral arguments of the parties and the record herein, the motion is denied for the reasons set forth herein.

## II. BACKGROUND

Plaintiffs Delbon Radiology ("Delbon") and Dr. Albert Joe Beardsley ("Beardsley") sue defendants Turlock Diagnostic, Emanuel, and thirty-eight individuals[1] on four counts: (1) violation of Section 1 of the Sherman Act; (2) violation of California's Cartwright Act; (3) violation of Section 2 of the Sherman Act; and (4) conspiracy to interfere with prospective economic advantage.

Plaintiff Delbon is a California partnership composed of plaintiff Beardsley and defendant Dr. David Hendrick ("Hendrick"), each

---

1. Plaintiffs voluntarily dismissed three individual defendants on September 21, 1993, leaving 35 individual defendants: John E. Baker, C. Robert Petit, and Carolyn Takhar.

of whom have a fifty percent ownership and control interest in Delbon. (Hendrick Decl. ¶ 1; Ex. 1 ¶ 12.) Delbon was organized for the purpose of conducting the general business of an outpatient radiology facility. (Hendrick Decl. Ex. 1 ¶ 1.) Defendant Turlock Diagnostic is a California partnership. Defendant Emanuel, a hospital, is general partner of Turlock Diagnostic, and all thirty-five individual defendants, except Hendrick, are medical doctors and limited partners of Turlock Diagnostic.

Plaintiffs allege or concede the following facts. Delbon opened in July 1983 to provide outpatient radiology services in Turlock, California. At that time, the only other clinic providing outpatient radiology services in Turlock was operated by Emanuel. Plaintiffs allege that Delbon owed its beginning success to its provision of outpatient radiology service which was superior to that offered by Emanuel, for a substantially lower price. In 1987, Emanuel proposed a joint venture to several local referring physicians in Turlock to open an outpatient radiology and physical therapy office. The physicians rejected this invitation and made a failed attempt to open their own radiology office without Emanuel's participation. The physicians then proposed to buy out Delbon, but were unable to reach a buyout agreement.

The physicians subsequently formed a partnership with Emanuel—the Turlock Diagnostic Center. Emanuel became general partner, and fifty limited partnership shares at $12,000/share were sold *only* to doctors who referred patients for radiology services in Turlock. Moreover, nearly every physician in Turlock who refers patients for radiology services became a partner of Turlock Diagnostic, buying one or one-half share. Each of the thirty-five individual defendants, except defendant Hendrick, is a partner of Turlock Diagnostic.

Plaintiffs allege that the only source of business for a radiology clinic is the referral of patients by physicians. Patients generally do not shop for radiology services and nearly always acquiesce in the physician's referral, even though patients or their insurance carriers pay for the radiology service. Because nearly all physicians who made radiology service referrals were Turlock Diagnostic partners and profited from referring patients to Turlock Diagnostic, Delbon's business dropped precipitously when Turlock Diagnostic opened in January 1989. By May 1992, Delbon was forced to close because it had lost so many referrals.[2] Delbon now has no offices, no employees, and no equipment. (Beardsley Decl. ¶ 4) The only remaining assets of the partnership, besides this lawsuit, include $1,500 in the bank and a few declining outstanding accounts which generate about $150–200 per month.

In June 1992, Hendrick and Beardsley arranged for the partnership's attorney to draft dissolution papers. Although Beardsley was willing to sign, Hendrick refused.

Parties stipulate that Hendrick, Beardsley's partner, is also president and sole physician employee of Turlock Radiological Medical Group ("Turlock Radiological"). Turlock Radiological entered into a currently effective contract with defendant Turlock Diagnostic on January 3, 1989, at about the same time that Turlock Diagnostic opened. In exchange for use of Turlock Diagnostic's facilities, Hendrick provides radiological services; both parties maintain independent contractor status. (Stip. Facts for Summ.J.Mot. Ex. A at 7.) Each is responsible for billing patients separately for its own services. (Stip.Facts Ex. A ¶ 4.2 at 6).

Beardsley brought this action for antitrust violations and interference with prospective economic advantage on April 6, 1993, in his own name and in the partnership's name.[3] Beardsley's attorney, Richard Rosenberg

---

**2.** Plaintiffs observe that the structure of Turlock Diagnostic—a partnership of referring physicians who profit from their referrals—violates both the Medicare Anti–Kickback Statute, 42 U.S.C. § 1320a–7b(b), and Cal.Bus. & Prof.Code § 650.

**3.** The *product market* is the market for outpatient radiological services. Such services are often absolutely required for proper medical diagnosis

and treatment, and there are no substitutes. The relevant *geographical market* is the town of Turlock. Because patients almost always seek ancillary medical services, including radiology, in their own locale, Turlock is an economically isolated market for outpatient radiology services. (First Am.Compl. ¶¶ 56, 57.)

("Rosenberg") notified Hendrick of his intention to file this suit in October 1992. (Rosenberg Decl. Ex. A.) Hendrick made no response to this news until after the suit began, nearly one year later. Hendrick opposes the lawsuit, requesting dismissal of Delbon's claims, and has been named a defendant. However, plaintiffs specifically allege that Hendrick is not responsible for any of the purported illegal conduct giving rise to the claims. (Complaint ¶ 17.) Hendrick has waived and released any interest which he might have either as an individual or as a partner of Delbon in this lawsuit. (Hendrick Decl. ¶ 4.)

Defendants Turlock Diagnostic Center ("Turlock Diagnostic") and Emanuel Medical Center ("Emanuel")[4] move for summary judgment, or alternatively, for summary adjudication under Fed.R.Civ.Proc. 56(b).

## II. *DEFENDANT'S MOTION FOR SUMMARY JUDGMENT UNDER FED R.CIV.PROC. 56(b)*

Defendants argue that they are entitled to summary judgment because plaintiff lacks the necessary authorization by the partnership to bring this action at all. This court may grant summary judgment if it finds there is "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. Proc. 56(c). Although the parties' stipulation to facts is limited, the parties essentially agree on the events that led to this suit. Defendants' motion for summary judgment is appropriate because defendant raises questions of law, the resolution of which does not involve disputed "material" facts. *See* Schwarzer, Tashima & Wagstaffe, *California Practice Guide: Federal Civil Procedure Before Trial* § 14:207, at 14–51.

Defendant raises a question of law: Does Beardsley have authority to enforce a partnership claim in spite of Hendrick's opposition to the suit?

Defendants correctly assert that plaintiffs' causes of action are partnership claims because the complaint seek damages for injuries to Delbon's business.[5] Bromberg & Ribstein, *Bromberg and Ribstein on Partnership* § 5.04(d), at 5:32 (1991). Lawsuits to enforce partnership claims are generally only instituted in the name of the partnership, Cal.Civ.Proc.Code § 388(a), or by all of the individual partners in their capacity as partners by common law. Bromberg & Ribstein, *supra,* § 5.02(b), at 5:8.

Defendants argue that although Delbon has the capacity to sue in its common name under both Cal.Civ.Proc. § 388(a) and Fed. R.Civ.Proc. 17(b)(1), Beardsley alone does not have the management authority to cause Delbon to bring suit. The Delbon partnership agreement does not specifically address the authority of a partner to institute a suit to enforce partnership claims. (Hendrick Decl. Ex. 1.) Nor does the agreement offer a solution to partner disputes. It only provides that "[e]ach partner shall have an equal voice in the management of the partnership." In cases of disagreement, Section 18(h) of the Uniform Partnership Act ("U.P.A.") or Cal. Corp.Code § 15018(h) provides:[6]

> Any difference arising as to *ordinary* matters connected with the partnership business may be decided by a majority of the partners; but no act in contravention of any agreement between the partners may be done rightfully without the consent of all partners.

U.P.A. § 18(h); Cal.Corp.Code § 15018(h) (emphasis added).

Defendants argue that this lawsuit is an *extraordinary* matter and falls outside § 18(h), thus requiring unanimous consent of Delbon's partners for authorization. Bromberg and Ribstein equate an "ordinary matter" under § 18(h) to a matter "for apparently carrying on the usual way of the business of the partnership" as described in U.P.A.

---

4. Eight other defendants join in the Motion: (1) Ronald Arakalian, (2) Glenn James, (3) Robert Eisenberg, (4) Kenneth Mitchem, (5) Robert Clark, (6) Donn Herrmann, (7) John Andrew, and (8) James Lilligren. Defendant Hendrick also joins.

5. Plaintiffs seek damages in excess of $1 million for loss of the value of plaintiffs' business, loss of business opportunities, loss of profits, and loss of good will. (Compl. ¶ 79.)

6. Parties agree that Cal.Corp.Code § 15018 is identical to U.P.A. § 18.

§ 9(1). Bromberg & Ribstein, *supra,* § 5.03(c), at 5:20–21. The treatise repeatedly points out, however, that "[g]iven the prevalence of American litigation, enforcement of a partnership's claim will often be an ordinary matter and subject to § 18(h)." *Id.* Defendants weakly assert that (1) a complex antitrust suit is not a claim a radiology clinic can expect to file; and (2) this suit "involves substantial risk and will consume significant partnership time and resources."

Even if this was only an ordinary business matter, however, defendants point out that Beardsley alone does not constitute a "majority." Defendants also casually mention that there are no exceptional circumstances in this case that would permit this lawsuit to proceed over Hendrick's objections.

Plaintiffs' rebuttal first attacks defendants' standing to assert the defense that the lawsuit is unauthorized:

> Third-party defendants are naturally concerned with avoiding liability, but their only properly cognizable concern is avoiding multiple suits on the same claims. This concern is satisfied if the first suit has preclusive effect.... *Consequently there will be little or no justification for recognizing a third-party defendant's objection that fewer than all the partners are trying to enforce the partnership's claim.*

Bromberg & Ribstein, *supra,* § 5.01(d), at 5:7. Plaintiffs rightly observe that there is no risk of multiple suits here: (1) Hendrick has been named as a necessary party and is bound by this suit's outcome; (2) Hendrick has released defendants of any potential liability in and beyond the present action. (Hendrick Decl. Ex. 2.) Plaintiffs' contention that defendants have no colorable standing to challenge plaintiffs' authorization is reasonable.

Defendants cite to contrary cases where the courts have entered summary judgment in favor of nonpartner defendants due to lack of authorization in the absence of any consideration of whether the pending litigation would have preclusive effect. *See e.g., Cates v. International Tel. & Tel. Corp.,* 756 F.2d 1161 (5th Cir.1985); *Hauer v. Bankers Trust New York Corp.,* 65 F.R.D. 1 (E.D.Wis.1974). However, those cases are inapplicable because they altogether fail to address the question of defendant's standing to assert the non-authorization defense at all. Defendants also argue that Hendrick, a partner, has standing to challenge Beardsley's authority. Yet, they suspiciously fail to offer any good faith reason to explain why Hendrick vehemently opposes this action in the partnership's interest.

Second, plaintiffs alternatively assert that Beardsley has the authority to maintain this action on behalf of the partnership in any event. They contend that because Hendrick has a contractual relationship with and derives income from Turlock Diagnostic, he has a conflict of interest that precludes his vote. Plaintiff quotes Bromberg and Ribstein:

> When a majority or unanimity requirement for enforcement of a partnership right might otherwise apply[,] a court may create an exception by disregarding partners who are defendants or otherwise have a conflict of interest as to the claim being sued on. In effect, the claim may be enforced by a majority of the disinterested partners (if a majority is required) or by all the disinterested partners (if unanimity is required).

Bromberg & Ribstein, *supra,* § 5.04(b), at 5:26–27.

Defendants argue that mere existence of an economic relationship does not permit this Court to strip Hendrick of his voting rights. They contend that Hendrick's ability to make partnership decisions is unaffected by his contract with Turlock Diagnostic, as evidenced by the fact that he has served as Delbon's partner and provided physician services for Turlock Diagnostic since January 1989. Moreover, defendants insist that there is no evidence that the contract creates for Hendrick any financial interest in Turlock Diagnostic, for they are formally independent contractors; Hendrick neither pays to nor receives from Turlock Diagnostic any compensation as a result of the contract. Finally, defendants flatly assert that Hendrick's connection to defendants is too attenuated and inconsequential to nullify Hendrick's vote; Hendrick is not an officer, director, or employee of Turlock Diagnostic.

In *Serpa v. Jolly King Restaurants, Inc.,* 62 F.R.D. 626 (S.D.Cal.1974), one ground that the court relied on to exceptionally permit minority partners to sue was the fact that the non-suing partners were also defendants involved in the alleged misconduct giving rise to the antitrust claims. Although Hendrick is not a defendant charged with actual wrongdoing, *Serpa's* reasoning that sufficient connection with the wrongdoers would create a conflict of interest applies in this case.

Likewise, in *Klebanow v. New York Produce Exchange,* 344 F.2d 294 (2d Cir.1965), the court permitted limited partners to bring a suit on behalf of a dissolved partnership because the general partners had assigned their entire management interest to a trustee who, although not a wrong-doer, was employed by defendants. Moreover, the court held that when state law returns only a murky answer to the question of capacity, federal judges are entitled to resolve the doubt in a way that permits assertion of the federal claim. Hendrick's contract with Turlock Diagnostic likewise creates a direct financial relationship with defendants, similar to the *Klebanow* trustee's employment with the New York Stock Exchange.

*See also Leh v. General Petroleum Corp.,* 165 F.Supp. 933, 938 (S.D.Cal.1958) ("[T]he desirability of permitting one of two partners of a dissolved partnership in the course of winding up to maintain in the partnership name an action ... is further argued by the circumstance at bar that Brown, the partner who refused to join in authorizing the suit, *may have not felt the economic freedom so to do....* [H]e felt that if this action persisted he would be dragged down in the mire to the point where he would never be able to get back in the oil business.") (emphasis added); *Thompson Door Co. v. Haven Fund,* 351 A.2d 864 (Del.1976) (relying on Delaware law to hold that because two of the three general partners were officers of the defendant corporation, the remaining partner possessed authority to bring the partnership suit). *Cf. Cates,* 756 F.2d at 1161 (denying plaintiff's capacity to sue and suggesting, instead, the use of a derivative suit or a suit for a fractional part of partnership claims).

The reasoning of prior case law largely compels a finding that Hendrick's contract with Turlock Diagnostic creates a conflict of interest that nullifies Hendrick's vote in the matter of partnership authorization.

■ Plaintiffs's third argument is not only superfluous, but it is also unpersuasive. It is unrealistic for plaintiffs to claim that Hendrick waived his right to make a "timely objection" to the suit because he waited nearly a year after notification of the lawsuit to voice his opposition in the proceedings. Hendrick's objection arose in an early stage of this litigation and is therefore timely. *See Leh,* 165 F.Supp. at 936 (an objection is timely if raised "at the very outset of the action"); Bromberg & Ribstein, § 5.03(c), at 5:19 ("The disagreement should be manifested early in the suit.").

■ Finally, plaintiffs argue that this antitrust suit is appropriate because Delbon is in dissolution. *See Serpa,* 62 F.R.D. at 626; *Leh,* 165 F.Supp. at 937 (an antitrust suit by minority partners is appropriate when the partnership is in dissolution). Although Hendrick and Beardsley never signed a formal dissolution agreement, plaintiffs argue that Delbon is actually dissolved because it is defunct. That is not the law. A single partner may not dissolve the partnership in violation of the partnership agreement. 9 Witkin, *Summary of California Law: Partnership* § 48, at 439. The Delbon partnership agreement explicitly says that the "partnership shall ... continue until dissolved by *mutual* agreement of the parties or be terminated as herein provided." Because neither condition has been satisfied, Delbon is not in dissolution and is not "winding up." This Court consequently rejects this ground to support its ruling.

■ However, this Court may place the partnership into dissolution by decree on application of a partner whenever "circumstances render dissolution equitable." Cal. Corp.Code § 15032; Witkin, *supra* § 51, at 441. This Court grants plaintiffs leave to amend its complaint to seek dissolution.

## III. DEFENDANTS' MOTION FOR SUMMARY ADJUDICATION (PARTIAL SUMMARY JUDGMENT) UNDER FED.R.CIV.PROC. 56

■ Defendants alternatively seek partial summary adjudication against plaintiffs' state

claims of violation of the Cartwright Act and interference with prospective economic advantage. They reason that plaintiffs rely on case law that creates exception to the majority rule of management for the preservation of *federal*, not state, claims. *See e.g., Leh*, 165 F.Supp. at 933; *Serpa*, 62 F.R.D. at 626.

Defendants' hair-splitting analysis of plaintiffs' authority offers no reason why this court should disregard the practicality and convenience that pendent jurisdiction affords. While much of plaintiffs' supporting case authority (e.g., *Leh* and *Serpa*) reasons *secondarily* that federal courts may favor the finding of capacity to bring federal claims when state law is unclear, defendants cite no case that affirmatively denies minority partner standing simply because his claim was not federal. Defendants also concede that the *Serpa* court preserved both the state and federal claims.[7]

## IV. DEFENDANT'S MOTION TO DISMISS HENDRICK AS DEFENDANT

■ Defendants casually request in their moving papers that Hendrick be dismissed for the foregoing reasons. However, Hendrick's presence may be necessary because it may be impossible to accord "complete relief among the parties" in his absence under Rule 19(a). ·Because Hendrick will be necessary if this Court entertains a supplemental dissolution action, he remains joined.

ACCORDINGLY, IT IS ORDERED that defendants' Motion for Summary Judgment or Summary Adjudication is denied as set forth herein.

IT IS FURTHER ORDERED that defendants' Motion to Dismiss defendant Hendrick is denied as set forth herein.

---

7. Moreover, California's Cartwright Act has the same treble damages remedy and private mechanism of enforcing antitrust laws that provide an impetus for *Leh's* and *Serpa's* holdings—the public interest in vigilant enforcement of antitrust laws through private actions. Cal.Bus. & Prof. Code § 16750(a); *Bruno v. Superior Court*, 127 Cal.App.3d 120, 132, 179 Cal.Rptr. 342 (1981).